UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| T.H., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:25-cv-00060-GFVT |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| FRANK BISIGNANO, *Commissioner of Social Security*, | ) | **ORDER** |
| | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff seeks judicial review of an administrative decision denying his claim for supplemental security income. T.H. brings this action pursuant to 42 U.S.C. § 405(g), alleging error on the part of the administrative law judge who considered the matter.[1] The Court, having reviewed the record and for the reasons set forth herein, will **GRANT** Plaintiff's Motion for Summary Judgement [R. 13] and **DENY** the Commissioner's [R. 17].

**I**

Plaintiff T.H. applied for Title XVI Supplementary Security Income benefits on October 14, 2022. [R. 13 at 4]. The Social Security Administration denied T.H.'s claim on initial review on March 13, 2022, and again upon reconsideration on July 10, 2023. T.H. then had a hearing with Administrative Law Judge Antony Saragas, via teleconference, on November 28, 2023, which again resulted in a denial of T.H.'s benefits on February 13, 2024. The Appeals Council denied T.H.'s request for review of that decision, which led him to file the instant Complaint

---

[1] The claimant's initials are used in lieu of their name to protect their sensitive medical information contained throughout the Memorandum Opinion and Order.

with this Court, seeking review under 42 U.S.C. § 405(g). Both parties have now filed motions for summary judgment which are ripe for review. [R. 13; R. 17].

**II**

To evaluate a claim of disability for Supplemental Security Income disability benefits, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 416.920. If at any step the ALJ can find that the claimant is disabled or not disabled, the analysis stops. *Id.* § 404.1520(a)(4). First, if a claimant is performing substantial gainful activity, he is not disabled. *Id.* § 404.1520(a)(4)(i). Second, if a claimant does not have a severe impairment or combination of impairment or combination of impairments, he is not disabled. *Id.* § 404.1520(ii). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 303, Subpart P, Appendix 1, he is disabled. *Id.* §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses his ability to perform certain physical and mental work activities on a sustained basis despite any impairment. *See id.* C.F.R. §§ 404.1520(e), 404.1545. Under the fourth step, an ALJ uses a claimant's RFC to determine whether he is still able to do his past work. *Id.* § 404.1520(a)(4)(iv). If so, he is not disabled. *Id.*

Finally, if an ALJ assesses a claimant's RFC in conjunction with his age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled. *See Id.* §§ 404.1520(g), 404.1560(c). Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is

2

precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

## A

The ALJ completed the requisite five-step analysis to determine T.H.'s disability status. He first determined that T.H. has not engaged in substantial gainful employment since October 14, 2022, which is the alleged onset point of the period in which he claimed to be disabled. [R. 11 at 27]. Next, the ALJ found that T.H. suffered from the following severe impairments: chronic obstructive pulmonary disease, asthma, obesity, degenerative disc disease, and anxiety disorder. [*Id.*] But at step three, the ALJ found that none of these impairments, nor any combination of them, "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1[.]" [*Id.* at 28].

Before proceeding to step four, the ALJ fashioned T.H.'s RFC. *See* 20 C.F.R. 404.1520(e). After considering the record, the ALJ determined that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except there should be no more than 20 minutes of uninterrupted standing and/or walking at one time. The claimant can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. He should never climb ladders, ropes, and scaffolds. The claimant should have no exposure to workplace hazards (such as unprotected heights or moving mechanical parts). There should be no concentrated exposure to pulmonary irritants (dust, odors, gases, and fumes). There should be no concentrated exposure to temperature extremes or vibration. There should be only occasional changes to workplace environment and/or routine. There should be no production pace work – that affected by or affecting pace of others, such as assembly line work.

[R. 11 at 30]. To make this finding, the ALJ first determined that T.H.'s medically determinable impairments could reasonably be expected to cause the alleged symptoms. [*Id.* at 31]. The ALJ also found, however, that T.H.'s statements regarding the intensity, persistence, and limiting

3

effects of his symptoms were not entirely consistent with "the medical evidence and other evidence in the record." [*Id*.]

Next, the ALJ proceeded to step four, concluding that T.H. is unable to perform past relevant work. [*Id*. at 35]. In reaching this conclusion, he specifically addressed whether T.H. could perform work as a hand packager or gate guard, concluding that he would be unable to do so "as actually or generally performed." [*Id*.] Proceeding finally to step five, the ALJ heard from a vocational expert and determined that there were numerous jobs that T.H. can perform in the national economy, including silverware wrapper, routing clerk, and office helper. [*Id*. at 36]. Consequently, the ALJ found that T.H. had not been under a disability, as defined in the Social Security Act from October 14, 2022, through the date of his decision. [*Id*.]

**B**

The Court's review of the ALJ's determination is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence" is said to be "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To decide whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

4

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). A reviewing court is restricted from making factual findings *de novo*, resolving conflicts in the evidence, or making credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Rather, if the Commissioner's decision is supported by substantial, legitimate evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id*. at 714.

T.H. raises two issues with the ALJ's findings. First, he argues that the substantial evidence does not support the step five finding that he can perform other work because the RFC assessment is overly vague and the vocational expert's testimony is in conflict with the regulations. [R. 13 at 9–10]. Second, he contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to address plaintiff's insomnia when formulating the RFC. [*Id.* at 11–14]. Plaintiff's second argument necessarily addresses step two. "If Plaintiff is correct that the ALJ made an error at step two and that a remand on that basis is required, it will not be necessary to determine whether the ALJ's [] residual functional capacity finding is supported by substantial evidence." *Rouse v. Comm'r of Soc. Sec.*, No. 2:16-CV-0223, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) (citation modified). The Court thus addresses the claimed step two error first.

C

At step two, the ALJ found that T.H. has the following medically determinable severe impairments: chronic obstructive pulmonary disease, asthma, obesity, degenerative disc disease, and anxiety disorder. [R. 11 at 27]. Plaintiff points out that the ALJ made no mention of his insomnia in the hearing decision. The issue before the Court is whether the ALJ's alleged failure to consider T.H.'s insomnia warrants remand.

5

T.H. states that the record reflects that he sought treatment for his insomnia reflected by multiple rounds of medication prescribed by his treating physician. [R. 13 at 14–15; R. 11 at 379–82, 384–85, 387, 389, 391, 393, 486–87]. This, he argues, constitutes a medically determinable impairment under the regulations. He suggests that the ALJ's failure to consider his insomnia as a medically determinable condition rendered the RFC incomplete and therefore not supported by substantial evidence. [R. 13 at 13].

The Commissioner responded that T.H. failed to demonstrate that his alleged insomnia was a medically determinable impairment or that it demonstrated functional limitations. [R. 17 at 14]. The Commissioner argues that T.H. failed to show that the evidence demanded additional limitations in the RFC to accommodate his alleged insomnia. In support of this argument, the Commissioner points out that the ALJ found several severe impairments at step two and progressed through the remaining analysis. The Commissioner also notes that Plaintiff failed to raise his insomnia as a significant issue during the process. [*Id.* at 12]. In whole, the Commissioner argues that while Plaintiff cited a few treatment records indicating an insomnia diagnosis, he has not shown that he had a medically determinable insomnia impairment or that it caused functional limitations in the RFC impacting his ability to work. [*Id.* at 14].

"The burden is on the claimant to satisfy the first four steps" of the five-step sequential analysis. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). The ALJ's determination of whether an impairment is severe, non-severe, or non-medically determinable implicates the administrative decision-making process. *Rouse v.* 2017 WL 163384, at *4. At the threshold level, the ALJ determines whether an impairment is medically determinable. A plaintiff establishes a medically determinable impairment by providing "objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921; *Tavion C. v. O'Malley*, No.

6

3:23-CV-00154-RSE, 2024 WL 713792, at *3 (W.D. Ky. Feb. 21, 2024). The claimant's statement of symptoms, a diagnosis, or a medical opinion will not establish the existence of a medically determinable impairment. *Id.*

A difference exists between finding an impairment medically determinable, on one hand, and classifying an impairment as severe or non-severe, on the other. *Tavion C.*, 2024 WL 713792, at *5. This is because an ALJ "may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable." *Id.* (quoting *Santiago v. Saul*, No. 3:19CV1026 (MPS), 2020 WL 5511651, at *2 (D. Conn. Sept. 14, 2020)). In other words, "an ALJ is not required to consider impairments that are not medically determinable when assessing a claimant's RFC." *Id.* (citing *Durbin v. Comm'r of Soc. Sec.*, No. 2:17-CV-896, 2020 WL 2744100, at *13 (S.D. Ohio May 27, 2020)). An ALJ's failure to find an impairment *severe* at step two is not reversable error so long as the ALJ found another impairment was severe and continued through the five-step sequential analysis. *Fink v. Astrue,* 253 F. App'x 580, 584 (6th Cir. 2007). But the failure to find an impairment *medically determinable* is not a harmless error where the ALJ does not indicate that he considered the Plaintiff's claimed impairments when assessing the RFC at step four. *Durbin*, 2020 WL 2744100, at *13.

In his Function Report, T.H. noted that he had issues breathing, including COPD, and that his various ailments affect his sleep. [R. 11 at 202–03]. He further noted that he has difficulty concentrating. [*Id.* at 207]. At the hearing, T.H. complained that his "breathing just keeps getting worse and worse," that he uses a CPAP machine at night because he "quit breathing so many times a night in my sleep," and that his breathing issue is one of the main reasons he began this process. [*Id.* at 47–49]. The administrative record contains evidence that

7

T.H. sought and received treatment for insomnia and sleep issues. A series of visits to Saint Joseph Primary Care from June 2020 to January 2023 reflect a significant and continuing history of sleep disturbances. [*Id.* at 377–404]. This included several attempts to control these symptoms through medications including Ambien, amitriptyline, Remeron, trazodone, Belsomra, and Lunesta. [*Id.* at 484–87].

The ALJ's failure to mention T.H.'s sleep disorders impedes the Court's review. *Tavion C.*, 2024 WL 713792, at *5; *Borger v. Comm'r of Soc. Sec.*, No. 3:20-CV-01930-JGC, 2021 WL 6297536, at *13 (N.D. Ohio Dec. 17, 2021) (citation modified). The ALJ did not address any of T.H.'s sleep issues, although he did evaluate the related breathing concerns, use of a CPAP machine, and medication history. *See* [R. 11 at 30–35]. The ALJ referenced Exhibit C6F, T.H.'s treatment records from St. Joseph Medical Group Pulmonary and Sleep, 23 times in the step four evaluation. [*Id.*] Notably, these records included his history of sleep problems and his doctor's treatment via various medications. [*Id.* at 377–405].

It may be possible to infer that the ALJ considered T.H.'s insomnia to be medically determinable but not severe, but the failure of the ALJ to explain whether this is the case warrants remand. *Borger*, 2021 WL 6297536, at *13. If the ALJ did not consider insomnia to be a medically determinable impairment, then failing to include it in the RFC would not be an error. *Id.* But if the ALJ considered insomnia a medically determinable impairment, then failing to include it in the RFC is error, whether severe or non-severe. *Id.* Without insight into how the ALJ categorized T.H.'s persistent sleep issues, the Court cannot properly review the ALJ's ultimate ruling. *Id.*; *Tavion*, 2024 WL 713792, at *5 ("[T]he Court finds this ambiguity alone sufficient to warrant remand"); *Durbin*, 2020 WL 2744100, at *14 ("The Court cannot assume that the ALJ considered Plaintiff's fibromyalgia symptoms, such as pain, in the absence of a

finding that her fibromyalgia was a medically determinable impairment. Accordingly, the Court reject's Defendant's contention that any error was harmless."). Because the ALJ made an error at step two, it is not necessary to determine whether the ALJ's residual functional capacity finding is supported by substantial evidence. *Rouse*, 2017 WL 163384, at *4.

The Commissioner argues at length that even if the ALJ erred by finding that T.H.'s insomnia was not a medically determinable impairment, that error was harmless. [R. 17 at 11]. The Commissioner reasons that this is because the ALJ found other conditions to be severe medically determinable impairments and thus continued on with the sequential analysis. But the Commissioner's position "conflates the analysis of whether an impairment is medically determinable with the analysis of whether a medically determinable impairment is severe." *Durbin*, 2020 WL 2744100, at *13 (citing 20 C.F.R. § 404.1521). An ALJ's mischaracterization of a medically determinable impairment as not severe is a harmless error because the ALJ still considers that non-severe impairment in the RFC. *Id.* But because the ALJ does not consider impairments considered non-medically determinable when fashioning the RFC, it can be reversable error to mischaracterize a claimed impairment as not medically determinable if the Plaintiff supports the existence of that impairment with objective medical evidence from an acceptable medical source. 20 C.F.R. § 416.921. T.H. appears to have done so here, and the ALJ's failure to explain his reasoning as to T.H.'s medically documented sleep issues warrants remand.

The Court will remand this case for further additional consideration under Sentence Four of 42 U.S.C. § 405(g). Pursuant to the Sixth Circuit's decision in *Follen v. Comm'r of Soc. Sec.*, 167 F.4th 352 (6th Cir. 2026), the Court remands this case on the merits to permit the Commissioner to develop the administrative record as necessary to determine whether Plaintiff is

9

disabled within the meaning of the Social Security Act, offer the opportunity for a new hearing, and issue a new decision. Specifically, the ALJ shall explain whether T.H.'s insomnia is a medically determinable impairment and whether it is severe or non-severe. The ALJ should also consider on remand T.H.'s alternative argument that the ALJ failed at step five to identify the Plaintiff's capacity for standing and/or walking with necessary specificity.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgement **[R. 13]** is **GRANTED**.

2. The Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further consideration under Sentence Four of § 405(g).

3. **JUDGMENT** in favor of the Plaintiff will be entered contemporaneously herewith.

This 22d day of April, 2026.

Gregory F. Van Tatenhove
United States District Judge